IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GROW MY PROFITS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 09-00161-CV-W-DGK |
| | ) | |
| KIRKEY PRODUCTS GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. #3) and Suggestions in Support (Doc. # 4), Plaintiff's Suggestions in Opposition (Doc. # 6), and Defendant's Reply Suggestions (Doc. #12). For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**.

### Procedural and Factual Background

Plaintiff Grow My Profits, LLC is a Missouri produce consulting company that assists produce growers, buyers and shippers in improving quality and reducing waste. Defendant Kirkey Products Group LLC is a Florida company that provides software, hardware and agribusiness consulting solutions for the agribusiness industry.

Plaintiff has brought this action against Defendant alleging breach of contract. Between approximately June 2007 and October 2007, Plaintiff provided consulting services for Defendant, which included analyzing Defendant's operations to determine ways to increase profits, identifying industry-wide opportunities that would prove beneficial to Defendant, and promoting and connecting Defendant to Plaintiff's contacts in the product industry.

Months after the formal consulting relationship ended, Anthony Totta, CEO of Plaintiff contacted Stanley Ruggiero, CEO of Defendant, in Idaho to discuss a brokerage agreement

should any of his contacts purchase the company. In March 2008, Plaintiff entered into a brokerage agreement with Defendant which would provide Plaintiff with a commission if Defendant became controlled, directly or indirectly, by Cardinal Link, one of Plaintiff's clients. Shortly thereafter, Plaintiff facilitated meetings between Defendant and Cardinal Link. On or around April 2008, Plaintiff learned that Defendant was in negotiations for the sale of the company to Cardinal Link. In July 2008, counsel for Defendant confirmed that it had transferred all of its assets to a new company, KPG Solutions, Inc. Plaintiff, under the belief that KPG Solutions, Inc. is controlled, directly or indirectly, by Cardinal Link, requested payment of the commission pursuant to the brokerage agreement. Defendant refused to pay Plaintiff the commission, contending that it is not obligated to pay the commission under the brokerage agreement because KPG Solutions, Inc. was not purchased by Cardinal Link.

Plaintiff filed this action in the Circuit Court of Jackson County, Missouri on October 3, 2008 against Defendants Kirkey Products Group LLC, KPG Solutions, Inc. and Angela Paymard alleging causes of action for breach of contract (Count I) and tortuous interference with contract (Count II). On February 27, 2009, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1332. On August 10, 2009, Plaintiff voluntarily dismissed claims against Defendants KPG Solutions, Inc. and Angela Paymard, which effectively eliminates Count II of the Complaint. Defendant Kirkey Products Group, LLC now moves to dismiss this action for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

**Standard**

To defeat the motion to dismiss for lack of personal jurisdiction, Plaintiff need only make a prima facie showing of jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir. 1990)). Plaintiff, as the party seeking to establish personal jurisdiction, has the burden of proof, and the burden does not shift to the party challenging jurisdiction. *Epps*, 327 F.3d at 647 (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992)).

A federal court sitting in diversity employs a two-part inquiry when reviewing a motion to dismiss for lack of personal jurisdiction. First, the Court must determine whether Defendant is subject to the Court's jurisdiction under the Missouri long-arm statute. *Insituform Techs., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1062 (E.D. Mo. 2005) (citing *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998)). If it is, then the Court must evaluate "whether the exercise of personal jurisdiction comports with the requirements of due process." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003). Ultimately, the Court must determine that Defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Missouri courts have construed the long arm statute "'to extend the jurisdiction of the courts of this state over nonresident defendants to the extent permissible under the Due Process Clause.'" *Moog World Trade Corp. v. Bancomer*, 90 F.3d 1382, 1384 (8th Cir. 1996) (quoting *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)).

### A. Missouri Long Arm Statute

The Missouri long arm statute, Missouri Revised Statute § 506.500, provides in pertinent part that

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>     (1) The transaction of any business within this state;
>     (2) The making of any contract within this state;
>     (3) The commission of a tortious act within this state;
> 3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo. Rev. Stat. § 506.500 (2003). The Missouri Supreme Court has declared that in enacting § 506.500 the legislature's "ultimate objective was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent possible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970) (en banc). As such, Missouri courts have interpreted the words "transaction of any business within this state" or "commission of a tortuous act within this state" broadly so as not to deny jurisdiction under § 506.500 in situations in which the due process clause would permit it. *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000).

Plaintiff alleges that jurisdiction is proper over Defendant because it purportedly has transacted business and entered into a contract in Missouri. Specifically, Plaintiff argues that Defendant has transacted business in Missouri by entering into a four-month contract in 2007 with Plaintiff, a resident of Missouri. Plaintiff claims that this consulting agreement required him to perform a majority of his work in Missouri. Plaintiff alleges that it exchanged emails,

4

telephone calls and other contacts with Defendant, during this consulting agreement while in Missouri.

In addition, Plaintiff claims that Defendant entered into the brokerage agreement at issue in Missouri. While the negotiations between the CEO of Plaintiff and the CEO of Defendant were conducted by telephone and email communications when the parties were located in different states, Plaintiff asserts that the brokerage agreement was accepted in Missouri.

Defendant contends that it does not have any contacts with Missouri that would support jurisdiction in this case. Defendant admits that it had a brief consulting relationship with Plaintiff in 2007, but maintains that Plaintiff solicited Defendant months after the consulting relationship had terminated and proposed a separate brokerage agreement. Defendant asserts that this agreement was signed and accepted in Idaho, and the work under the contract was to be performed exclusively outside of Missouri. Defendant further contends that it has never solicited or transacted any business in Missouri, nor did it ever engage in any discussion regarding the brokerage agreement in Missouri. Defendant avers that is has never maintained any property in Missouri and none of its representatives have ever been to Missouri. All communications in connection with the brokerage agreement were by telephone and email between Defendant's offices in Idaho and Florida and Plaintiff in Missouri.

### 1. *Transacting Business*

To constitute the "transaction of business" under the long-arm statute, some activity related to the transaction in question must be undertaken by the non-resident defendant in Missouri. *Burns & McDonnell Engineering Co., Inc. v. Anderson*, 2005 WL 3107698, at *3 (W.D. Mo. Nov. 18, 2005). In the absence of additional contacts, communications by mail,

5

telephone and email do not rise to the level of "transaction of any business" in Missouri. *Id; see also Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002).

In this case, the Court concludes that Defendant's contacts are not sufficient to satisfy a "transaction of business" under the Missouri long-arm statute. Plaintiff's consulting relationship with Defendant in 2007 did not give rise in any way to this lawsuit. The parties entered into the brokerage agreement at issue more than four months after the consulting relationship was terminated. Moreover, Defendant is not registered to do business in Missouri and does not maintain a registered agent for service of process in Missouri. Neither Defendant nor any of its employees ever went to Missouri in connection with the brokerage agreement, and Defendant does not maintain an office, place of business, or property in Missouri. The most that can be said to support the proposition that Defendant conducted business in Missouri is that, Defendant's CEO who resides in Idaho and Florida, communicated by telephone and email with Plaintiff, in Missouri. Because these contacts, without more, do not rise to the level of transacting business in Missouri for the purposes of the long-arm statute, Defendant did not "transact business" in Missouri. *See Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 2002) ("The use of interstate facilities (telephone and mail)… cannot alone provide the 'minimum contacts' required by due process.").

### 2. *Making of Any Contract in Missouri*

A contract is formed where the last act necessary to form a binding contract, acceptance of the contract, occurs. *Primus Corp. v. Centroformat Ltd.*, 2006 WL 181953, at *3 (W.D. Mo. Jan. 23, 2006) (citing *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114, 120 (Mo. Ct. App. 2002)). In this case, Plaintiff contacted Defendant by email and proposed forming a brokerage agreement. The parties negotiated the terms of the agreement by email over the course of several

6

weeks. Plaintiff admits that it sent Defendant an unsigned draft of the agreement for review and Defendant, in turn, signed the copy of the draft and returned it to Plaintiff. Plaintiff contends, however, that it accepted the brokerage agreement in Missouri when, upon receiving the signed agreement from Defendant, it signed the agreement and mailed it to Defendant in Florida. In contrast, Defendant argues that the agreement was not binding until the CEO of Defendant accepted the terms of the agreement by email, while in Idaho.

Plaintiff's signature following Defendant's acceptance of the brokerage agreement has no legal significance. *See Burns*, 2005 WL 3107698, at *4. In *Burns*, the defendant in Montana received a purchase order from plaintiff in Missouri. *Id.* Defendant signed the purchase order in Montana and returned it to plaintiff, who signed the purchase order in Missouri. *Id.* The *Burns* court rejected plaintiff's argument that a binding contract was not formed until plaintiff "accepted" its own terms and conditions as stated in its own purchase order. *Id.* The court concluded that plaintiff's signature "was not necessary to form a binding contract; it was merely an acknowledgement of the [D]efendant's acceptance." *Id; see also Johnson Heater Corp.*, 86 S.W.3d at 119 (offer was accepted when defendant signed the proposal. Plaintiff's signature following defendant's acceptance of the proposal was merely an acknowledgement of defendant's order).

*Burns* is analogous to the instant case. The final act giving rise to the brokerage agreement was Defendant's acceptance of the contract, which occurred in Idaho when Defendant accepted Plaintiff's proposal by email. Therefore, the contract was made in Idaho, not Missouri, and Defendant is not subject to the jurisdiction of this Court under the long-arm statute.

7

### B.     Due Process

Even though Plaintiff has not met the requirements of the Missouri long-arm statute, the Court will examine whether subjecting Defendant to the jurisdiction of this Court violates the Due Process Clause.  Due process allows a court to exercise personal jurisdiction over a nonresident defendant when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The central question is whether a defendant has "purposefully availed" himself of the privilege of conducting activities in the forum state so that he should "reasonably anticipate being haled into court there."  *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

To evaluate the sufficiency of Defendants' contacts, this Court considers five factors: 1) the nature and quality of Defendants' contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties.  *Steinbuch*, 518 F.3d at 586 (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).  Significant weight is afforded to the first three factors, and the other factors are secondary and not dispositive.  *Dever v. Hentzen Coatings, Inc.* 380 F.3d 1070, 1073 (8th Cir. 2004).

Applying these factors to the present case, the Court concludes that Plaintiff has failed to establish that Defendant had sufficient contacts with Missouri to justify the exercise of personal jurisdiction.  Defendant has had no contact with Missouri, nor has it availed itself of the privilege of conducting business in Missouri.  All negotiations leading to the brokerage agreement were conducted by phone and email communications while the CEO of Plaintiff was located in
8

Missouri and the CEO of Defendant was located in either Idaho or Florida. *Johnson Heater Corp.*, 86 S.W.3d at 120 (phone calls, mailings, and a facsimile transaction were not enough to create a "substantial connection" with Missouri such that compelling defendant to court in Missouri would not offend the notion of fair play). Moreover, the mere fact that an out-of-state defendant has entered into a contract with a Missouri resident is not enough to confer jurisdiction. *Angelica Corp. v. Gallery Mfg. Corp.*, 904 F.Supp. 993, 997 (E.D. Mo. 1995)(citing *Minnesota Mining & Mfg. v. Nippon Carbide Indus.*, 63 F.3d 694, 698 (8th Cir. 1995)). As such, these contacts are not sufficient, under the Due Process Clause, to justify an exercise of personal jurisdiction over the Defendant.

## Conclusion

For the reasons set forth above, the Court does not have personal jurisdiction over Defendant in this action. Therefore, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim is **GRANTED**.

**IT IS SO ORDERED.**

Date: August 13, 2009

                /s/ Greg Kays
                GREG KAYS, JUDGE
                UNITED STATES DISTRICT COURT